# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAKE CHARLES DIVISION

| | |
|---|---|
| RANDY McDONALD | CIVIL ACTION NO. 05-1448-LC |
| VS. | SECTION P |
| BURL CAIN, WARDEN | JUDGE TRIMBLE |
| | MAGISTRATE JUDGE WILSON |

## REPORT AND RECOMMENDATION

Before the court is the petition for writ of *habeas corpus* (28 U.S.C. §2254) filed on August 11, 2005 by *pro se* petitioner Randy McDonald. Petitioner is an inmate in the custody of the Louisiana Department of Public Safety and Corrections. He is incarcerated at the Louisiana State Penitentiary, Angola, Louisiana where he is serving the life sentence imposed following his 2002 aggravated rape conviction in the Fourteenth Judicial District Court, Calcasieu Parish.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the following reasons it is recommended that the petition be **DISMISSED WITH PREJUDICE.**

## STATEMENT OF THE CASE

The petition [doc. 1-1], its accompanying memorandum [doc. 1-4] and exhibits [doc. 1-3], the answer [doc. 20-1], its accompanying memorandum [doc. 20-3] and exhibits [doc. 20-2], along with the published jurisprudence of the State of Louisiana establish the following relevant facts:

*1. First Trial*

On December 3, 1998, the Calcasieu Parish Grand Jury indicted petitioner and four

accomplices with aggravated rape. [doc. 20-2, Vol. 1, pp. 1-3]. On October 20, 2000, petitioner's first trial ended in a mistrial when the jury failed to return a verdict. [doc. 1-4, p. 8; doc. 20-2, Vol. 1, pp. 39-42].

## *2. Second Trial*

On July 3, 2001, petitioner filed a motion to recuse the trial judge who had been assigned his case. [doc. 1-3, Exhibit X; doc. 20-2, Vol. 2, p. 433]. The judge found the motion to have merit and recused himself prior to trial. [doc. 1-3, Exhibit X, DD; doc. 20-2, Vol 2, p. 434[1]].

On January 24, 2002, petitioner, through court-appointed counsel, filed a Motion to Quash, alleging that the State had failed to re-try him within the one-year period of limitation provided by LSA C.Cr.P. art. 582.[2] [doc. 1-3, Exhibit P; doc. 20-2, Vol. 2, pp. 453-456]. The motion was denied on February 1, 2002. [doc. 20-2, Vol. 1, pp. 49-50]. In denying the Motion to Quash, the trial judge ruled that the provisions of LSA C.Cr.P. art. 579[3] were applicable because the defendant filed a motion to recuse Judge Gray which delayed the new trial and that was a cause beyond the control of the State. [doc. 20-2, Vol. 9, pp. 1-11].

The second trial commenced on April 1, 2002. On April 4, 2002, the jury returned a verdict of guilty as charged. [doc. 20-2, Vol. 1, pp. 53-66]. Petitioner's Motion for Post-Verdict Judgment of Acquittal was denied, and the petitioner was sentenced to life imprisonment on

---

[1] The Motion and Order were apparently presented to Judge Gray by counsel for the Defendant. The Judge apparently executed the order on June 20, 2001 but submitted both the Motion and Order to the Clerk of Court for filing on July 3, 2001.

[2] LSA C.Cr.P. art. 582 provides: "When a defendant obtains a new trial or there is a mistrial, the state must commence the second trial within one year from the date the new trial is granted, or the mistrial is ordered, or within the period established by Article 578, whichever is longer."

[3] LSA C.Cr.P. art. 579 provides in part: "The period of limitation established by Article 578 shall be interrupted if ... The defendant cannot be tried ... for any other cause beyond the control of the state..."

April 5, 2002. [doc. 1-4, p. 8; doc. 20-2, Vol. 1, p. 67].

### 3. Direct Appeal

Petitioner timely appealed to the Third Circuit Court of Appeals. His court-appointed attorney filed an appeal brief raising a single assignment of error – sufficiency of evidence. [doc. 1-3, Exhibit A; doc. 20-2, Vol. 7, pp. 1461-1475]. On September 12, 2002, court-appointed appellate counsel filed a Supplemental Appeal brief raising an additional Assignment of Error – "The trial court erred by denying Defendant's motion to quash the commencement of the second trial based upon time limitations." [doc. 1-3, Exhibit C; doc. 20-2, Vol. 7, pp. 1476-1482]. On October 10, 2002 petitioner filed a *pro se* Supplemental Brief and argued two Assignments of Error:

1. Whether or not the trial court erred in denying defendant's Motion to Quash the Indictment under La. C.Cr.P. art. 582 relying on an incorrect application of the statutory law; and

2. Whether or not the trial court erred by forcing the accomplices to testify over the invocation of their Fifth Amendment right to be free from self-incrimination. [doc. 1-3, Exhibit D; doc. 20-2, Vol. 7, pp. 1500-1523].

On February 5, 2003, the Third Circuit Court of Appeals affirmed petitioner's conviction and sentence. In so doing, the court determined that the evidence was sufficient to support petitioner's conviction;[4] that petitioner's retrial was timely commenced;[5] and, that petitioner did

---

[4] The Third Circuit made the following observations: "In reviewing the sufficiency of the evidence to support a conviction, an appellate court in Louisiana is governed by the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under this standard the appellate court must determine that the direct and circumstantial evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt. *State v. Captville*, 448 So.2d 676 (La.1984). *State v. Meyers*, 620 So.2d 1160, 1162 (La.1993).

\* \* \*

As Defendant's appellate counsel acknowledges in brief, credibility is within the province of the fact-finder. In view of all the testimony supporting the basic elements of the crime, and the supporting DNA evidence, this Court finds the jury was reasonable in finding the State's witnesses credible, and in finding Defendant guilty of aggravated rape."

not have standing to argue the Fifth Amendment rights of his accomplices who were allegedly forced to testify against him.[6] See *State of Louisiana v. Randy McDonald*, 2002-909 (La. App. 3d Cir. 2/5/2003, 838 So. 2d 128. [See also, doc. 1-3, Exhibit E, Slip Opinion; doc. 20-2, Vol. 7, pp. 1447-1460]

---

*McDonald*, 838 So.2d at 130-131, 134.

[5] The court stated, "As noted in the procedural history recited at the beginning of this opinion, Defendant's first trial resulted in a mistrial. Defendant complains his second trial commenced untimely. The time limitations for bringing a defendant to trial are governed by La.Code Crim.P. art. 578: Except as otherwise provided in this Chapter, no trial shall be commenced: (1) In capital cases after three years from the date of institution of the prosecution; (2) In other felony cases after two years from the date of institution of the prosecution; and (3) In misdemeanor cases after one year from the date of institution of the prosecution. The offense charged shall determine the applicable limitation. The grand jury handed down the indictment on December 3, 1998. Defendant initially stood trial on October 17, 2000. The court declared a mistrial on October 20, 2000, and the Defendant's second trial commenced on April 1, 2002. The State argues that a Defense motion to recuse suspended the running of the time limitation imposed by Article 578. Judge Alcide Gray signed the recusal order on June 20, 2001, but it was not filed until July 3, 2001. The State notes La.Code Crim.P. art. 580 (emphasis added): When a defendant files a motion to quash or other preliminary plea, the running of the periods of limitation established by Article 578 shall be suspended until the ruling of the court thereon; but in no case shall the state have less than one year after the ruling to commence the trial. Defendant cites La.Code Crim.P. art. 582: 'When a defendant obtains a new trial or there is a mistrial, the state must commence the second trial within one year from the date the new trial is granted, or the mistrial is ordered, or within the period established by Article 578, whichever is longer.' However, Article 580 applies to retrial situations otherwise governed by Article 582. *State v. Brooks*, 505 So.2d 714 (La.1987), *cert. denied*, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363(1987), Thus, as Defendant's trial commenced less than one year after the recusal ruling, the State argues it was timely. The lower court agreed and denied the motion. FN5 [The Court obtained two supplemental records, one filed with this court on November 6, 2002, and the other filed on November 15, 2002.] This Court has not found a case discussing whether a recusal motion is a 'preliminary plea.' However, such a motion would seem to be of the same genera as a motion to quash, and thus be covered by Article 580. See, e.g.,La.Code Crim.P. art. 912(B), in which motions to quash and motions to recuse are named as motions for which the State can appeal from adverse judgments. It is clear that the second trial began within a year of the recusal. Defendant's arguments ignore the clear statutory language granting the State one year from the ruling to commence trial. However, his attorney-filed supplemental brief neither provides jurisprudence nor suggests a logical reason to ignore the language of article 580. Defendant's pro se brief claims that Judge Gray recused himself. This is plainly incorrect, as the record shows his trial counsel submitted a motion on this matter on June 20, 2001. In the pro se brief, Defendant footnotes part of article 580, omitting the language that grants the State one year from a ruling on a preliminary motion to begin trial. Thus, his arguments ignore or omit the statutory authority of Article 580. As the State observes, it was required to retry Defendant within one year of the recusal ruling, and it did so. For the reasons discussed, this assignment lacks merit." *McDonald*, 838 So.2d at 135-36.

[6] The court stated "In his second pro se assignment, Defendant argues the court erred by ordering Guillory, Hoffpauir, and Schoening to testify. In his argument, he asserts the witnesses' constitutional rights not to incriminate themselves. U.S. Const. amend. V. However, the Defendant does not have standing to argue the Fifth Amendment rights of other individuals. *State v. Gaspard*, 96-1279 (La.App. 3 Cir. 2/11/98), 709 So.2d 213, *writ denied*, 98-582 (La.7/2/98) 724 So.2d 202. Therefore, the assignment lacks merit. *McDonald*, 838 So.2d at 136.

On March 1, 2003 petitioner applied for *certiorari* in the Louisiana Supreme Court.[7]

Petitioner urged the following claims for relief:

1.    The Appellate Court Panel, reviewing the defendant's claims was tainted, where, Judge Billy Howard Ezell, should have recused himself, because of his prior involvement with the defendant in a child custody case in the matter of *Randy McDonald v. Edd Walden*, in the Juvenile Court in 1997.

2.    The evidence was [in]sufficient to support a constitutionally sound verdict required by the provisions of the Fourteenth Amendment's Due Process Clause.

3.    The Appellate Court's finding, 'the record shows [] trial counsel submitted a motion [to recuse Judge Gray] on this matter on June 20, 2001' is based on erroneous facts where the extract/computer print-out of the Court Minutes clearly shows that there was no motion to recuse filed whatsoever in this cause.

4.    The Appellate Court erred in finding the provisions of La. C.Cr.P. art. 580 are applicable to a judge's recusal on his own motion; and further erred in upholding the trial court's denial of the defendant's motion to quash.

5.    The Defendant argues he has third party standing to assert his co-defendant's rights not to incriminate themselves under the Fifth Amendment of the United State's Constitution under the Fourteenth Amendment's equal protection clause. [doc. 1-3, Exhibit F; doc. 20-2, Vol. 7, pp. 1523B – 1523W]

On October 17, 2003 the Supreme Court denied writs. *State of Louisiana v. Randy L. McDonald*, 2003-0807 (La. 10/17/2003), 855 So.2d 758. [See also doc. 1-3, Exhibit G; doc. 20-2, Vol. 7, p. 1523X].

### 4. Application for Post-Conviction Relief

On January 14, 2004 petitioner filed a *pro se* Application for Post-Conviction Relief in the Fourteenth Judicial District Court. Therein he argued the following claims for relief:

---

[7] The petition for *certiorari* was signed on March 1, 2003; however, according to the Supreme Court's writ notice, the filing was post-marked February 26, 2003. [doc. 20-2, Vol. 7, p. 1523A and 1523U - 1523V]

1.      Judge Billy Howard Ezell violated the statutory provisions of La. C.Cr.P. art. 671(A)(1) and (A)(5) when he failed to recuse himself from sitting on the panel that decided Petitioner's appeal; and thereafter writing the opinion for the court; and

2.      The provisions of La. R.S.46:1844(W) – Confidentiality of crime victims who are minors and victims of sex offenses, §(1) are unconstitutional as applied to petitioner as the statute creates a 'Special Law' regarding a 'class' of defendants in violation of LSA Const. Arts I §2, 3 and U.S. Const. Amend. 14 because petitioner was denied his right to review and obtain a copy of the criminal proceedings regarding the second trial. Additionally Mrs. Dora Rabalais at the Louisiana State Penitentiary whom was directed by the Appellate court to allow McDonald the right to review his transcripts disobeyed the appellate court mandate on her own authority and returned the trial records to the court of appeal, Third Circuit annulling the appellate court's order and petitioner guaranteed rights under the federal and state constitution. [doc. 1-3, Exhibit H; doc. 20-2, Vol. 7, pp. 1524-1543].

On March 1, 2004, the trial court denied petitioner's application. In so doing, the court addressed the Claim 1 and noted, "The petitioner states in his application that Judge Billy H. Ezell with the Court of Appeals, Third Circuit should not have presided over the his [sic] appeal due to previous involvement with Family and Juvenile Court. The petitioner must address this address with the Court of Appeals, Third Circuit." The court did not address the second claim specifically, but ordered that the "application be denied as repetitive." [doc. 1-3, Exhibit I; doc. 20-2, Vol. 7, p. 1568].

On March 29, 2004, petitioner filed a notice of intent to seek writs to the Third Circuit. [doc. 1-3, Exhibit J]. On April 1, 2004 he submitted his writ application to the Third Circuit Court of Appeal. [doc. 1-3, Exhibit K; doc. 20-2, Vol. 7, pp. 1570-1640].

On May 20, 2004, the Third Circuit denied writs stating, "There is no error in the trial court's ruling. See La. Code Crim.P. arts. 930.4, 929 and 930. See also *State v. Edwards*, 420

So.2d 663 (La. 1982) and *State v. McDonald*, 02-909 (La. App. 3 Cir. 2/5/03), 838 So.2d 128, writ denied, 03-807 (La. 10/17/03), 855 So.2d 758." [See doc. 1-3, Exhibit L – *State of Louisiana v. Randy L. McDonald*, KH 04-00446 (La. App. 3d Cir. 5/20/2004)(unpublished); doc. 20-2, Vol. 7, p. 1641].

On June 9, 2004 petitioner applied for writs in the Louisiana Supreme Court. Petitioner's hand-written application specified no claims for relief, but rather stated, "Petitioner request that this Honorable Court reads the post-conviction and Exhibits to assist in its understanding what steps was taken, and the reason his conviction and sentence was not demanded." [doc. 1-3, Exhibit M; doc. 20-2, Vol. 7, pp,1642-1651].[8] A typed "supplement" accompanying his application but dated June 22, 2004 asked for permission to submit a copy of the Bill of Indictment in his case to demonstrate that the provisions of R.S.46:1844(W) were inapplicable to his case. [doc. 1-3, Exhibit N; doc. 20-2, Vol. 7, pp. 1652-1657].

On May 6, 2005 his writ application was denied. *State ex rel. Randy McDonald v. State of Louisiana*, 2004-KH-1627 (La. 5/6/2005), 901 So.2d 1081. [See also doc. 1-3, Exhibit O; doc. 20-2, Vol. 7, p. 1660].

## 5. Federal Habeas Corpus

On August 11, 2005 petitioner submitted his federal *habeas corpus* petition. He raised and argued the following Claims for Relief:

1.	The evidence was insufficient to sustain the conviction in violation of the Fourteenth Amendment of the United States Constitution. [doc. 1-4, pp. 11-22]

2.	The trial was commenced untimely and resulted in denial of due process

---

[8] Elsewhere the undersigned refers to this pleading as a "bare bones" application or petition.

and equal protection of the law in violation of the Fourteenth Amendment of the United States Constitution. [*id.*, pp. 22-27]

3.    The trial court erred by forcing the accomplices to testify over the invocation of their Fifth Amendment right to be free from self-incrimination. [*id.*, pp. 28-30]

4.    Petitioner's due process and equal protection rights guaranteed by the Fourteenth Amendment of the United States Constitution were violated when the appellate court panel, reviewing the defendant's claims became tainted when Judge Billy Howard Ezell failed to recuse himself because of his prior involvement in a 1997 child custody case in the matter of '*Randy McDonald v. Edd Walden*' in Louisiana State Juvenile Court. [*id.*, pp. 31-32]

5.    The provisions of La. R.S.46:1844(W) – Confidentiality of crime victims who are minors and victims of sex offenses, §(1) are unconstitutional as applied to petitioner as the statute creates a 'Special Law' regarding a 'class' of defendants in violation of LSA Const. Arts I §2, 3 and U.S. Const. Amend. 14 because petitioner was denied his right to review and obtain a copy of the criminal proceedings regarding the second trial. Additionally Mrs. Dora Rabalais at the Louisiana State Penitentiary whom was directed by the Appellate court to allow McDonald the right to review his transcripts disobeyed the appellate court mandate on her own authority and returned the trial records to the court of appeal, Third Circuit annulling the appellate court's order and petitioner guaranteed rights under the federal and state constitution. [*id.*, pp. 33-38]

On February 6, 2006, the undersigned completed an initial review and directed service of process on the respondent. [doc. 9].  On March 30, 2006 the respondent filed an answer [doc. 20-1], a memorandum [doc. 20-3], and the state court record. [doc. 20-2].   On July 3, 2006 petitioner responded to the State's procedural objections. [doc. 23].

## *Law and Analysis*

### *1. Timeliness*

This petition was filed after the effective date of the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Therefore, the court must apply the provisions of AEDPA,

including the timeliness provisions. *Villegas v. Johnson,* 184 F.3d 467, 468 (5th Cir. 8/9/1999); *In Re Smith,* 142 F.3d 832, 834, citing *Lindh v. Murphy,* 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

Title 28 U.S.C. §2244(d)(1)(A) was amended by AEDPA to provide a one-year statute of limitations for the filing of applications for writ of *habeas corpus* by persons in custody pursuant to the judgment of a State court. This limitation period generally runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. §2244(d)(1)(A).

However, the statutory tolling provision set forth in 28 U.S.C. § 2244(d)(2) provides that the time during which a properly filed application for post-conviction relief was pending in state court is not counted toward the limitation period. *Ott v. Johnson,* 192 F.3d 510, 512 (5th Cir. 1999); *Fields v. Johnson,* 159 F.3d 914, 916 (5th Cir. 1998); 28 U.S.C. §2244(d)(2). Any lapse of time before the proper filing of an application for post-conviction relief in state court is counted against the one-year limitation period. *Villegas,* 184 F.3d 467, citing *Flanagan v. Johnson*, 154 F.3d 196, 197 (5th Cir.1998).

‾‾‾‾‾‾Federal courts have interpreted § 2244(d)(1)(A) to provide that the state court judgment is not final for *habeas* purposes until the 90 day period for filing a *writ of certiorari* to the United States Supreme Court has run (see Supreme Court Rule 13; *Ott v. Johnson*, 192 F.3d 510 (5th Cir. 1999)). "Direct review, which includes a petition for *certiorari* to the Supreme Court, occurs 'when the Supreme Court either rejects the petition for certiorari or rules on its merits.' *Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir.2003). If no petition is filed, then we examine the second method of creating finality, 'the expiration of the time for seeking such review.' *Id.* If a criminal

defendant has pursued his direct appeal through the highest state court, then this period includes the 90 days for filing a petition for *certiorari* to the Supreme Court. *Id.* If not, then it includes the time for seeking further state-court direct review. *Id.* At the conclusion of these periods, the judgment becomes final." *Foreman v. Dretke*, 383 F.3d 336, 338 (5th Cir. 2004).

Petitioner's judgment of conviction was affirmed on direct appeal on February 5, 2003. See *State of Louisiana v. Randy McDonald*, 2002-909 (La. App. 3 Cir. 2/5/2003), 838 So.2d 128. His application for writs to the Louisiana Supreme Court were timely filed on March 1, 2003. The Supreme Court denied writs on October 17, 2003. *State of Louisiana v. Randy L. McDonald*, 2003-0807 (La. 10/17/2003), 855 So.2d 758. Thus, for AEDPA purposes, petitioner's judgment of conviction became final 90 days later, or, on or about January 17, 2004. Respondent concedes this finding of fact and conclusion of law. [see doc. 20-1, p. 4]

Thereafter, the record establishes that petitioner filed an otherwise timely Application for Post-Conviction Relief on or about January 14, 2004. [see doc. 1-3, Exhibit H; doc. 20-2, Vol. 7, pp. 1524-43]. Petitioner was thus able to avail himself of the statutory tolling provision of §2244(d)(2) during the pendency of this state post-conviction proceeding in the district court and the Third Circuit Court of Appeals.

Respondent argues that petitioner's *habeas* petition is time-barred because petitioner's writ application in the Louisiana Supreme Court was filed beyond the 30-day limitations period established by Supreme Court Rule X §5(a). In support of this claim, respondent notes that the judgment of the court of appeals was rendered on May 20, 2004 and argues that the writ application was not filed with the Louisiana Supreme Court until June 29, 2004. Respondent also argues that this writ application "failed to raise substantive claims for relief" and therefore it

"was not sufficient to qualify as a 'properly filed' state post-conviction review application for AEDPA's tolling purposes". [doc. 20-1, pp. 4-5]

Petitioner, on the other hand, notes that the Supreme Court writ application in question was post-marked on June 14, 2004 and therefore considered filed and timely under Supreme Court Rule X §5(d) which provides, "An application properly mailed shall be deemed timely filed if mailed on or before the last day of the delay for filing . . . the timeliness of the mailing shall be shown only by an official United States postmark". The record clearly establishes that petitioner's writ application was post-marked June 14, 2004. [doc. 20-2, Vol. 7, p. 1651][9] Therefore, the pleading in question was timely. The pleading in question remained pending until the Supreme Court denied writs on May 6, 2005. *State ex rel. Randy McDonald v. State of Louisiana*, 2004-1627 (La. 5/6/2005), 901 So.2d 1081. Petitioner filed his federal *habeas* petition on August 11, 2005. Therefore, the undersigned concludes that: (1) petitioner's judgment of conviction and sentence became final for AEDPA purposes 90 days following the denial of writs on direct review, or, on or about January 17, 2004; (2) petitioner availed himself of the statutory tolling provisions of §2244(d)(2) by filing an application for post-conviction relief which tolled the limitations period during the period of time between January 2004 – May 2005; (3) petitioner filed his federal *habeas corpus* petition in August 2005 and by that time, only a few months of the one-year period of limitations established by the AEDPA had lapsed un-tolled. Therefore, the undersigned concludes that the instant petition is timely.

---

[9] The record further demonstrates that petitioner tendered his pleadings to prison authorities for mailing on June 11, 2004. Under the "mailbox rule," that date, if necessary would control the date of filing. *Houston v. Lack*, 487 U.S. 266, 276, 276, 108 S.Ct. 2379, 2385, 101 L.Ed.2d 245 (1988). *State ex rel. Egana v. State*, 00-2351 (La.9/22/00), 771 So.2d 638.

That finding, however, does not end our timeliness analysis because respondent also contends that even if timely filed, petitioner's "'writ application' which stated no claims for relief, and simply urged review of the proceedings below . . . did not meet state procedural requirements [and] . . . failed to raise substantive claims for relief [and] . . . thus was not sufficient to qualify as a 'properly filed' state post conviction review application for AEDPA's tolling purposes." [doc. 20-1, p. 4]. In support of this argument, respondent cites *Baldwin v. Reese*, 541 U.S. 27, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004), *Williams v. Cain*, 217 F.3d 303 (5th Cir. 2000), and *Moore v. Cain*, 298 F.3d 361 (5th Cir. 2002). [*id.*]

In *Baldwin v. Reese*, 541 U.S. 27, 30-33, 124 S.Ct. 1347, 1350-52, 158 L.Ed.2d 64 (2004), the Supreme Court addressed the issue of exhaustion of state court remedies and held that a state prisoner does not "fairly present" his federal claim to a state court if that court must read beyond the petition or brief to find material that will alert it to the presence of the claim.

In *Williams v. Cain*, 217 F.3d 303, 306 (5th Cir. 2000), the Fifth Circuit addressed the tolling provisions of §2244(d)(2) and citing *Villegas v. Johnson*, 184 F.3d 467 (5th Cir.1999), and *Smith v. Ward*, 209 F.3d 383 (5th Cir.2000), noted that an application seeking post-conviction relief in the Louisiana trial court is "properly filed" only if it "conforms with a state's applicable procedural filing requirements," defined as "those prerequisites that must be satisfied before a state court will allow a petition to be filed and accorded some level of judicial review." Thereafter, the court determined that an application ceases to be "pending" within the meaning of section 2244(d)(2) if the petitioner fails to timely to file his application for a supervisory writs with the Louisiana Supreme Court. *Williams*, 217 F.3d at 309.

In *Moore v. Cain*, 298 F.3d 361 (5th Cir. 2002), the Fifth Circuit was called upon to

determine whether or not a petition for mandamus filed in the Louisiana courts was a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment" pursuant to §2244(d)(2). The court ultimately ruled that the mandamus petition could not toll the AEDPA limitations period noting, "[the petitioner's] mandamus application apparently sought an order directing the trial court to perform its duty . . . . It did not challenge the judgment pursuant to which [petitioner] is incarcerated." Therefore, the Fifth Circuit concluded that the petitioner's federal habeas petition was time-barred since the petition for mandamus could not toll the AEDPA limitations period. *Moore*, 298 F.3d at 367. Before arriving at that conclusion, however, the Fifth Circuit made the following observations:

> In holding the applications were not 'properly filed', the district court relied on *Williams v. Cain*, 217 F.3d 303, 306 (5th Cir.2000) (internal quotation marks omitted), which held an application is 'properly filed' when it 'conforms with a state's applicable procedural filing requirements', defined as 'those prerequisites that must be satisfied before a state court will allow a petition to be filed and accorded some level of judicial review.'

> Assuming *arguendo* the district court is incorrect that a state *habeas* application's not conforming to article 926 is not 'properly filed', the Second Circuit's writ denial occurred on 19 December 1996 (during the limitations period that commenced on 24 April 1996, but was tolled by the pending state habeas application); and Moore's federal *habeas* petition was not filed until 15 May 1998, far more than a year later. Accordingly, assuming Moore's state *habeas* applications were 'properly filed', the only way his federal petition is timely is if AEDPA's limitations period was tolled between the Second Circuit's writ denial (19 December 1996) and the Louisiana Supreme Court's writ denial concerning his mandamus application (16 May 1997). (The Sixth Circuit has held that 'a state petition for post-conviction or other collateral review must present a federally cognizable claim for it to toll the statute of limitations pursuant to ... §2244(d)(2)'. *Palmer v. Carlton*, 276 F.3d 777, 780 (6th Cir.2002). It is unknown whether Moore's mandamus application did so, because it is not in the record on appeal. In the light of our holding the federal application time-barred, we need not reach this issue.) *Moore*, 298 F.3d at 365-366.

Thus, to the extent that the respondent relies upon these cases to support his argument that petitioner's "bare bones" writ application was not "properly filed" so as to toll the AEDPA limitations period during its pendency, the undersigned must conclude that such reliance is misplaced. First, respondent implies too broad an interpretation of *Baldwin v. Reese*; that case speaks to the issue of exhaustion of state court remedies and not to the issue of limitations under the AEDPA. Second, *Williams*, which does in fact address limitations under AEDPA, should be limited to its narrow holding that an untimely filed writ application in the Louisiana Supreme Court cannot serve to toll the federal limitations period. Finally, while a broad reading of *Moore* appears to provide support for the respondent's argument, that which supplies support for respondent's argument is clearly *dicta*.[10] Read narrowly, *Moore's* judgment rested on the Fifth Circuit's determination that a petition for mandamus, since it does not collaterally attack the judgment of conviction, is ineffective to toll the AEDPA limitations period. In any event, the undersigned concludes that, at least for the purposes of 28 U.S.C. §2244(d)(2), the petitioner's

_____

[10] Respondent apparently relies on the following parenthetical statement from *Moore*, "The Sixth Circuit has held that 'a state petition for post-conviction or other collateral review must present a federally cognizable claim for it to toll the statute of limitations pursuant to ... §2244(d)(2)'. *Palmer v. Carlton*, 276 F.3d 777, 780 (6th Cir.2002). It is unknown whether Moore's mandamus application did so, because it is not in the record on appeal. In the light of our holding the federal application time-barred, we need not reach this issue.) *Moore*, 298 F.3d at 365-366. However such reliance is misplaced. Even if the statement were not *dicta* (which it most certainly is), the principal of law stated therein and attributed to *Palmer v. Carlton* has been repudiated by the Sixth Circuit Court of Appeals. *Palmer*, cited with approval in *Moore*, relied in turn upon *Austin v. Mitchell*, 200 F.3d 391, 394 (6th Cir. 1999), *cert. denied*, 530 U.S. 1210, 120 S.Ct. 2211, 147 L.Ed.2d 244 (2000) for the proposition that "a state petition for post-conviction or other collateral review must present a federally cognizable claim for it to toll the statute of limitations pursuant to 28 U.S.C. §2244(d)(2)." However, *Austin*, was overruled by the Sixth Circuit in *Cowherd v. Million*, 380 F.3d 909, 912-914 (6th Cir. 2004)("In *Austin*, this court interpreted §2244(d)(2) to mean that, in order to toll the statute of limitations, the state post-conviction petition 'must raise a federal constitutional issue.' *Austin*, 200 F.3d at 394. The court's interpretation relied heavily on policy and its reading of the Supreme Court's discussion of the exhaustion requirement in 28 U.S.C. §2254(c) in *O'Sullivan v. Boerckel*, 526 U.S. 838, 844, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999)... Since our decision in *Austin*, at least four other circuits have wrestled with this particular issue, and all have rejected Austin's interpretation. [citations omitted] ...*Austin* does not adequately consider the difference between 'judgment' and 'claim' in §2244(d)(2). Thus, the plain meaning of the statutory test requires us to reject *Austin's* interpretation...")

application for writ of *certiorari* was a properly filed application for post-conviction within the meaning of the statute, and, that therefore, petitioner should be afforded the benefit of statutory tolling under §2244(d)(2) during the pendency of his writ application in Louisiana's Supreme Court.

## 2. Exhaustion

Title 28 U.S.C. § 2254 states, as relevant to this proceeding:

(b)(1) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that (A) the applicant has exhausted the remedies available in the courts of the State; or
(B)(i) there is an absence of available State corrective process; or
(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

\*     \*     \*

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.
28 U.S.C. § 2254.

The exhaustion doctrine set forth in section 2254 requires that the state courts be given the initial opportunity to address and, if necessary, correct alleged deprivations of federal constitutional rights in state cases. *Castille v. Peoples*, 489 U.S. 346, 349, 109 S.Ct. 1056, 1059, 103 L.Ed.2d 380 (1989). The doctrine serves "to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings." *Rose v. Lundy*, 455 U.S. 509, 518, 102 S.Ct. 1198, 1203, 71 L.Ed.2d 379 (1982).

Federal and state courts are equally obliged to guard and protect rights secured by the Constitution. Therefore, it would be inappropriate for a federal district court to upset a state

court conviction without first giving the state court the opportunity to correct the alleged constitutional violation.

To have exhausted his state remedies, a federal *habeas* petitioner must have fairly presented the substance of his federal constitutional claims to the highest state courts. *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir.1997); *Skelton v. Whitley*, 950 F.2d 1037, 1041 (5th Cir.), *Richardson v. Procunier*, 762 F.2d 429, 431 (5th Cir.1985); *Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir.1982). Exhaustion requires that any federal constitutional claim presented to the state courts be supported by the same factual allegations and legal theories upon which the petitioner bases his federal claims. *Picard v. Connor*, 404 U.S. 270, 276, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971). Further, as shown above a state prisoner does not "fairly present" his federal claim to the state court if that court must read beyond the petition or brief to find material that will alert it to the presence of the claim. *Baldwin v. Reese*, 541 U.S. 27, 30-33, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004).

An examination of plaintiff's claims for relief in light of the foregoing is therefore appropriate.

### Claim 1 – Sufficiency of the Evidence

Petitioner claims that "The evidence was insufficient to sustain the conviction in violation of the Fourteenth Amendment of the United States Constitution." [doc. 1-4, pp. 11-22] Petitioner's court-appointed appellate counsel argued a claim of insufficiency of evidence in the direct appeal to the Third Circuit Court of Appeals. Counsel argued that the "constitutional standard for testing the sufficiency of the evidence as enunciated in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based upon proof

sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt." [doc. 1-3, Exhibit A; doc. 20-2, Vol. 7, at p. 1466]. Likewise, petitioner's *pro se* writ application to the Louisiana Supreme Court argued insufficiency of the evidence as a federal claim arising under the due process clause of the Fourteenth Amendment as interpreted by *Jackson v. Virginia, supra*. [doc. 1-3, Exhibit F; doc. 20-2, Vol. 7, pp. 1523L - 1523N]. It thus appears that petitioner's first claim for relief has been fully exhausted. Further discussion of the merits of this claim is therefore in order.

### Claim 2 – Speedy Trial

In his second claim for relief petitioner claims, "The trial was commenced untimely and resulted in denial of due process and equal protection of the law in violation of the Fourteenth Amendment of the United States Constitution." [doc. 1-4, pp. 22-27]

A similar claim was presented on direct appeal as *Pro Se* Assignment of Error Number 1 and as counseled Assignment of Error Number 2. However, as noted by the respondent

> Federal habeas review of this claim is entirely precluded because: (a) Petitioner does not adequately assert a federal constitutional claim. His complaints to the lower state courts and before this one cite state law . . . . The Third Circuit's decision rejecting this claim was based on state law grounds . . . . Petitioner's habeas claim therefore concerns state law, and its application and interpretation by Louisiana courts. Objections to a state court's interpretation of state law cannot be reviewed by federal habeas courts. *Young v. Dretke*, 356 F.3d 616, 628 (5th Cir. 2004). (b) Petitioner has not fairly presented a federal constitutional claim to state courts, and thus has violated the 'fair presentation' exhaustion requirement. *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998); *Morris v. Dretke*, 413 F.3d 484, 491 (5th Cir. 2005).
> [doc. 20-1, p. 6]

The law and evidence support this assertion.

Petitioner's counseled assignment of error on direct appeal was articulated as follows: "The trial court erred by denying Defendant's motion to quash the commencement of the second trial based upon time limitations." [doc. 1-3, Exhibit C; doc. 20-2, Vol. 7, p. 1480]. In support of his argument, appellate counsel argued violations of various provisions of the Louisiana Code of Criminal Procedure as interpreted by Louisiana Supreme Court jurisprudence. Counsel did not argue that petitioner's rights to a speedy trial under the United States Constitution were violated. [doc. 1-3, Exhibit C; doc. 20-2, Vol. 7, pp. 1480-1482]. Likewise, in his *pro se* brief, petitioner argued only violations of Louisiana statutory law and the state jurisprudence interpretative thereof. Petitioner did not contend, as he does now, that his trial and conviction were violative of the speedy trial guarantees embodied in the United States Constitution. [doc. 1-3, Exhibit D; doc. 20-2, Vol. 7, pp. 1506-1510].

Further, when petitioner sought writs from the Louisiana Supreme Court on direct review, he argued his speedy trial claim as a violation of state and not federal law. [doc. 1-3, Exhibit F; doc. 20-2, Vol. 7 pp. 1523N-1523S]

In other words, it is clear that, as argued by respondent, petitioner did not fairly present the substance of his federal claims to the State courts. Claim 2 thus remains unexhausted.

## Claim 3 – Coerced Testimony of Accomplices

In his third claim for relief petitioner argues, "The trial court erred by forcing the co-defendants to testify over the invocation of their Fifth Amendment right to be free from self-incrimination." [doc. 1-4, pp. 28-30]. Petitioner raised this argument as his second *pro se* Assignment of Error on direct appeal. [doc. 1-3, Exhibit D; doc. 20-2, Vol. 7, pp. 1510-1512]. He argued the same claim as Issue No. 5 in his application for writs filed in the Supreme Court

on direct review. [doc. 1-3, Exhibit F; doc. 20-2, Vol. 7, pp. 1523D, 1523S-1523U]. This claim appears to have been fully exhausted and therefore a discussion of the merits will follow.

**Claim 4 – Recusal of the Appeals Court Judge**

In his fourth claim for relief petitioner argues, "Petitioner's due process and equal protection rights guaranteed by the Fourteenth Amendment of the United States Constitution was violated when the appellate court panel, reviewing the defendant's claims became tainted when Judge Billy Howard Ezell failed to recuse himself because of his prior involvement in a 1997 child custody case in the matter of '*Randy McDonald v. Edd Walden*' in Louisiana State Juvenile Court." [doc. 1-4, pp. 31-32].

Petitioner raised a similar argument in his application for writs to the Supreme Court on direct review as Claim No. 1. Therein he claimed, "The Appellate Court Panel, reviewing the defendant's claims was tainted, where, Judge Billy Howard Ezell, should have recused himself, because of his prior involvement with the defendant in a child custody case in the matter of *Randy McDonald v. Edd Walden*, in the Juvenile Court in 1997." [doc. 1-3, Exhibit F; doc. 20-2, Vol. 7, pp. 1523K-1523L.]. However, petitioner did not argue the claim as a federal due process claim in his state court writ application. Instead, petitioner argued that Court of Appeals Judge Ezell "should have recused himself as grounds for recusal clearly existed under the provisions of La. C.Cr.P. art. 671(A)(1) . . . and La. C.Cr.P. art. 671(A)(5)." Petitioner also argued that the failure of the judge to recuse himself violated the canons or code of judicial conduct. In support of his argument he cited only Louisiana jurisprudence – *In re Lemoine*, 96-2116 (La. 1/14/97), 686 So.2d 837, *on rehearing*, 96-2116 (La. 4/4/97), 692 So.2d 358.

Again, respondent argues that this claim was not fairly presented to the Supreme Court on

direct review and therefore remains unexhausted. [doc. 20-1, pp. 7-9]

Of course, petitioner raised this claim again in his application for post-conviction relief as Claim I. Therein he articulated the claim as follows, "Judge Billy Howard Ezell violated the statutory provisions of La. C.Cr.P. art. 671(A)(1) and (A)(5) when he failed to recuse himself from sitting on the panel that decided Petitioner's appeal; and thereafter writing the opinion for the court." [doc. 1-3, Exhibit H; doc. 20-2, Vol. 7, pp. 1528; 1538]. Petitioner argued no federal violations with regard to this issue in his memorandum in support of post-conviction relief and confined himself to an argument identical to that raised in his previous application for *certiorari*. [*id*.]. Petitioner argued no federal claim with regard to this issue when he sought review in the Third Circuit Court of Appeals. [doc. 1-3, Exhibit K; doc. 20-2, Vol. 7, pp. 1581-1582].

The undersigned agrees with respondent: Petitioner did not fairly present the federal issue he now claims to the Louisiana courts. Thus, Claim 4 remains unexhausted.

### Claim 5 – Unconstitutionality of La. R.S.46:1844(W)

As his fifth claim for relief petitioner argued,

The provisions of La. R.S.46:1844(W) – Confidentiality of crime victims who are minors and victims of sex offenses, §(1) are unconstitutional as applied to petitioner as the statute creates a 'Special Law' regarding a 'class' of defendants in violation of LSA Const. Arts I §2, 3 and U.S. Const. Amend. 14 because petitioner was denied his right to review and obtain a copy of the criminal proceedings regarding the second trial. Additionally Mrs. Dora Rabalais at the Louisiana State Penitentiary whom was directed by the Appellate court to allow McDonald the right to review his transcripts disobeyed the appellate court mandate on her own authority and returned the trial records to the court of appeal, Third Circuit annulling the appellate court's order and petitioner guaranteed rights under the federal and state constitution.
[doc. 1-4., pp. 33-38].

This claim was raised as Claim II in petitioner's Application for Post-Conviction Relief.

[doc. 1-3, Exhibit H; doc. 20-2, Vol. 7, pp. 1529; 1538-1541]. It was also raised in petitioner's writ application filed in the Third Circuit Court of Appeals. [doc. 1-3, Exhibit K, doc. 20-2, Vol. 7, pp. 1582-1584].

However, as pointed out by respondent [doc. 20-1, p. 10], this claim was not fairly presented to the Louisiana Supreme Court in petitioner's "bare bones" writ application. [doc. 1-3, Exhibit M; doc. 20-2, Vol. 7, pp. 1642-1651; doc. 1-3, Exhibit N; doc. 20-2, Vol. 7, pp. 1652-1657]. Therefore, petitioner's fifth claim for relief remains unexhausted.

### 3. Procedural Default

As stated above, a fundamental prerequisite to federal *habeas* relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief. *Rose v. Lundy*, 455 U.S. 509, 519-20, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). The exhaustion requirement is satisfied only when the substance of the federal *habeas* claim has been fairly presented to the highest state court. *Picard v. Connor*, 404 U.S. 270, 275-78, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). A federal court claim must be the "substantial equivalent" of one presented to the state courts if it is to satisfy the "fairly presented" requirement. *Id.* While the *habeas corpus* applicant need not spell out each syllable of the claim before the state court to satisfy the exhaustion requirement, [*Lamberti v. Wainwright*, 513 F.2d 277, 282 (5th Cir.1975)], clearly the petitioner cannot present new legal theories or new factual claims in his federal application. *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir.1997). Further, as shown above a state prisoner does not "fairly present" his federal claim to the state court if that court must read beyond the petition or brief to find material that will alert it to the presence of the claim. *Baldwin v. Reese*, 541 U.S. 27, 30-33, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004).

The respondent has raised petitioner's failure to exhaust as a defense to this habeas corpus petition; and, based upon the record now before the court, the undersigned has concluded that Claims 2, 4, and 5 were not fairly presented to the Louisiana courts and therefore these claims are not exhausted.

Nevertheless, petitioner can no longer litigate these claims in the Louisiana courts because any attempt to seek further post-conviction review would result in the dismissal of these claims pursuant to LSA C.Cr.P. art. 930.4 (which prohibits successive applications for post-conviction relief) or LSA C.Cr.P. art. 930.8 (which provides for a period of limitations for the filing of applications for post-conviction relief.)[11] Since petitioner no longer has a state court remedy available for these unexhausted claims, they may be considered "technically" exhausted. *Habeas corpus* claims are considered to be "technically" exhausted but procedurally defaulted when state court relief is no longer available, without regard to whether the claims were actually exhausted by presentation to the state courts. *Coleman v. Thompson*, 501 U.S. 722, 731-33, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)(if a petitioner 'fails to exhaust available state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would find the claims procedurally barred', then the claim is procedurally defaulted. *Nobles*, 127 F.3d at 420 (quoting *Coleman*, 501 U.S. at 735 n. 1, 111

---

[11] LSA C.Cr.P. art. 930.4(E) provides, "A successive application may be dismissed if it raises a new or different claim that was inexcusably omitted from a prior application." LSA C.Cr.P. art. 930.8 provides, "No application for post-conviction relief ... shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of Article 914 or 922..." Petitioner's judgment of conviction and sentence became final under the provisions of art. 922(D) when the Louisiana Supreme Court denied petitioner's timely application for writs on October 17, 2003. *State of Louisiana v. Randy L. McDonald*, 2003-0807 (La. 10/17/2003), 855 So.2d 758.

S.Ct. 2546). Thus, when federal *habeas* claims "are 'technically' exhausted because, and only because, [petitioner] allowed his state law remedies to lapse without presenting his claims to the state courts . . . there is no substantial difference between nonexhaustion and procedural default." *Magouirk v. Phillips*, 144 F.3d 348, 358 (5th Cir.1998).

Once it is determined that petitioner's claims are procedurally defaulted, a different analysis must be employed. *Habeas corpus* relief may be granted on procedurally defaulted claims only if the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Moawad v. Anderson*, 143 F.3d 942, 947 (5th Cir.) (pre-AEDPA); *Nobles*, 127 F.3d at 423 n. 33 (post-AEDPA); *Williams v. Cain*, 125 F.3d 269, 276 (5th Cir.1997) (post-AEDPA); *cf. United States v. Flores*, 135 F.3d 1000, 1006 n. 23 (5th Cir.1998) (post-AEDPA, § 2255).

Nothing herein suggests that the failure of the court to consider petitioner's technically exhausted but procedurally defaulted claims will result in a miscarriage of justice. The miscarriage exception is "confined to cases of actual innocence, 'where the petitioner shows, as a factual matter, that he did not commit the crime of conviction.'" *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir.1999) (quoting *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir.1995)).

Petitioner implies that he is actually innocent, but he provides no facts to show that he did not commit the crime for which he was convicted. Instead, he relies upon conclusory allegations. To satisfy the "miscarriage of justice" test, Petitioner must supplement his constitutional claim with a colorable showing of factual innocence. *Sawyer v. Whitley*, 505 U.S. 333, 335-36, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992). To satisfy the "factual innocence" standard, there must be a

fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the petitioner's guilt. See *Sawyer*, 505 U.S. at 335-40, 112 S.Ct. 2514 ("factual innocence" means a fair probability that, in light of all the evidence, the trier of the fact would have entertained a reasonable doubt as to the defendant's guilt). The "factual innocence" test, requires the habeas court to give consideration to the all of the evidence now available on the issue of the guilt or innocence. In order to prevail, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him. *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998).

Petitioner has alleged no specific facts satisfying the "factual innocence" standard. Because he failed to satisfy the "actual innocence" test, he is not entitled to relief from his procedural defaults under the fundamental miscarriage of justice exception.

As stated above, petitioner may also avoid the procedural default bar by showing cause and prejudice. In order for a *habeas* petitioner to avoid the procedural bar by showing cause and prejudice, he must show that "some objective factor external to the defense" prevented the petitioner from properly raising the claim in state court. *McClesky v. Zant*, 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991)(quoting, *Murray*, 477 U.S. at 488).

The failure to raise constitutional claims in the state courts must be attributed to petitioner himself. In any event, even if petitioner could show cause for his default, he cannot demonstrate prejudice. A habeas petitioner makes "this showing where he demonstrates that, but for the error, he might not have been convicted." *Id.* See *Pickney v. Cain,* 347 F.3d 542, 545 (5th Cir. 2003). As is shown hereinafter, petitioner's claims are without merit and therefore he cannot

demonstrate prejudice.

### 4. The Merits of Petitioner's Exhausted Claims

Since  petitioner filed his federal *habeas corpus* petition after the enactment of the

Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA),  all of the provisions of that

Act must be applied.  AEDPA prohibits a federal court from granting an application for *habeas*

*corpus* with respect to any claim that was adjudicated on the merits in state court proceeding

unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United

States," or "was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding." 28 U.S.C. § 2254(d) (1996).  The  state court's factual

determinations are presumed correct; but can be rebutted by clear and convincing evidence.  28

U.S.C. § 2254(e)(1).

Unreasonable applications of clearly established Federal law occur when the state court,

"identifies the correct governing legal principle from [the Supreme Court's] decisions but

unreasonably applies that principle to the facts of petitioners case." *Wiggins v. Smith*, 539 U.S.

510, 520, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362,

413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (opinion of O'CONNOR, J.)).  In other words, "the

state court's decision must have been [not only] incorrect or erroneous [but] <u>objectively</u>

<u>unreasonable</u>." *Wiggins v. Smith, supra*, at 520-521, 123 S.Ct. 2527 (quoting *Williams v. Taylor,*

*supra*, at 409, 120 S.Ct. 1495).  In making this determination, the federal court "should ask

whether the state court's application of clearly established federal law was objectively

unreasonable". *Id*.  An unreasonable application of federal law is different from an incorrect

application of federal law. *Id.*

Claims 1 (sufficiency of the evidence) and 3 (coerced testimony of accomplices) were
fully exhausted in the Louisiana courts and were adjudicated on the merits.  Therefore, petitioner
must satisfy the AEDPA requirements before relief may be granted.

### Claim 1 – Sufficiency of the Evidence

Petitioner argues that his "conviction was primarily the result of the testimony of S.V.,
the alleged victim, which was inconsistent on may occasions." While conceding that crediblity is
not ordinarily reviewed, he argues "testimony can occasionally be so inconsistent and equivocal
that the essential elements of the crime were not proven beyond a reasonable doubt". [doc. 1-4, p.
13].  Thereafter petitioner's argument simply attacks the credibility of all of the state's witnesses.
Petitioner argued a sufficiency of the evidence claim on direct appeal.  In rejecting this claim, the
Court of Appeal made the following observations:

> In this assignment, Defendant argues the evidence adduced at trial was insufficient
> to support his conviction. The test for such sufficiency challenges is well-settled:
> In reviewing the sufficiency of the evidence to support a conviction, an appellate
> court in Louisiana is governed by the standard enunciated in *Jackson v. Virginia*,
> 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under this standard the
> appellate court must determine that the direct and circumstantial evidence, viewed
> in the light most favorable to the prosecution, was sufficient to convince a rational
> trier of fact that all of the elements of the crime had been proved beyond a
> reasonable doubt. *State v. Captville*, 448 So.2d 676 (La.1984).
> *State v. Meyers*, 620 So.2d 1160, 1162 (La.1993).
>
> Louisiana Revised Statutes 14:42 sets forth the elements of aggravated rape,
> stating, in pertinent part:
>
> 'A. Aggravated rape is a rape committed upon a person sixty-five years of age or
> older or where the anal, oral, or vaginal sexual intercourse is deemed to be
> without lawful consent of the victim because it is committed under any one or
> more of the following circumstances:
> (1) When the victim resists the act to the utmost, but whose resistance is

overcome by force.

(2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.

(3) When the victim is prevented from resisting the act because the offender is armed with a dangerous weapon.

\* \* \*

(5) When two or more offenders participated in the act.

\* \* \*

For purposes of Paragraph (5), 'participate' shall mean:

(1) Commit the act of rape.

(2) Physically assist in the commission of such act.'

At trial, the victim testified Defendant had sexual intercourse with her twice, once vaginally and once anally. Further, she testified she did not consent to have sex with him. Essentially, the Defendant and four other men gang-raped her.

The victim's testimony was corroborated by the DNA evidence. Forensic DNA analyst Gina Pineda of Reliagene Technologies testified regarding the genetic evidence in this case. Pineda explained that Reliagene analyzed samples from a vaginal swab. The swab contained female and male genetic material. Testing of the female genetic material did not exclude the victim as being the donor. Pineda stated male genetic material was supplied by more than one man, but the DNA analysis excluded 99.9 percent of the population. The analysis did not exclude Defendant as a donor of the genetic material. Thus, Defendant was a member of the .01 percent of the population that could have contributed to the male genetic material.

The victim's testimony was also corroborated by the testimony of the other males who were in the house during the offense. Scott Burnett, deceased at the time of the present trial, was sleeping on a couch during the offense. His testimony from Defendant's previous trial was read before the jury. He testified that he lived at the house where the offense occurred, as did Defendant and Michael Hoffpauir. Burnett recalled that Defendant, Hoffpauir, 'Justin,' 'another Michael,' Forrest Bradford, and the victim were in the house on the afternoon of September 28, 1998. He testified that he slept most of the afternoon and evening, although Michael and Justin woke him up 'one or two times.' He also woke up at about 10:00 and 132 p.m., and saw Michael and Justin leaving with the victim. He did not know about the incident until the next day.

Burnett testified that on the day after the incident, he asked Defendant 'what all went on' the night before. Defendant replied all the other men had consensual sex with the victim, although he told Burnett that 'Justin' put a pillow over her head and struck her with a pistol. Defendant also told Burnett that he had tried to have

intercourse with the victim, but was unable to perform because he was too drunk. Burnett suggested that Defendant call the police, but soon all the men, including Burnett, were in police custody. Burnett also testified that Defendant and Hoffpauir hurriedly discarded or removed the victim's belongings from the house. One of Defendant's accomplices, Forrest Bradford, testified at the present trial. He claimed that he had consensual sex with the victim, then left the room. He said Defendant and the other men also wanted to have sex with S.V.; she refused, but they proceeded to have intercourse with her against her will. The witness testified he did not see actual sexual entry, but saw Defendant performing 'motions of sex.' Bradford stated that while Defendant was apparently having intercourse with the victim, one of the other men had a gun pointed at her head. He testified Defendant left the room, then went back in, saying he wanted to perform another sex act. However, Bradford was not sure whether Defendant actually had intercourse with the victim a second time.

Bradford acknowledged that he pled guilty to sexual battery in connection with the incident at issue. Also, he noted that Scott Burnett was laying on the couch and did not participate in the offense.

Michael Hoffpauir took the stand and admitted he had non-consensual intercourse with the victim. He also testified that Defendant had non-consensual vaginal and anal intercourse with S.V. The witness acknowledged that he had been convicted of aggravated rape for his participation in the offense at issue.

Michael Guillory testified that on September 28, 1999, he was doing community service at a drug treatment center in Lake Charles. S.V. was 'kicked out' of the center, and Guillory saw her crying on the steps. Guillory recalled that the victim wanted to get a ride out of town, so he took her to the nearby home of his friend, Dewey Miller, who let S.V. use the telephone. She was unsuccessful in reaching anyone; she and Guillory then left Miller's house.

While outside the house, they encountered Kristopher Schoening, a.k.a. 'Justin.' Guillory, Schoening, and S.V. then smoked marijuana together. They returned to Miller's house, but he needed to go elsewhere, so the trio walked to Defendant's house. When they arrived, Defendant, Bradford, and Hoffpauir were there. Burnett was also there, sleeping on the couch.

Guillory and Schoening left the victim there and walked to Guillory's house, then returned. While at Defendant's house, Guillory noticed that Schoening had a gun under his shirt. At some point, Schoening told the victim that Bradford needed to talk to her about potential transportation. Guillory testified that when he looked in the bedroom, he saw Bradford and the victim having sex.

According to Guillory, Defendant wanted to have intercourse with S.V. after Bradford was finished. She did not want to, but Defendant and at least one of the other men pulled her pants down, and Defendant got between her legs. He then had intercourse with her. Defendant then left the room; Hoffpauir and Schoening each had intercourse with her. Later, Defendant returned and appeared to have intercourse with the victim from a posterior position.

During the offense, as the various men had intercourse with S.V., Schoening had a gun, and at some point put a pillow over the victim's head and pistol-whipped her. However, Guillory's testimony was unclear regarding whether the pistol was actually pointed at her while Defendant had intercourse with her. Guillory testified that before the offense occurred, he told the victim that Defendant had a weapon. On the stand, Guillory acknowledged that he had non-consensual intercourse with S.V., and that he agreed to a plea bargain in juvenile court in connection with the offense at issue.

Schoening also took the stand and testified that Defendant had non-consensual intercourse with S.V. Otherwise, his testimony was short and not very detailed. We find the above evidence clearly supports the conviction. The testimony showed that Defendant and other offenders had non-consensual sexual intercourse with the victim, thus violating La.R.S. 14:42(A)(5). One of the participants had a gun and used it to threaten and batter the victim. Thus, Defendant could also be viewed as a principal to violating the first three subsections of La.R.S.14:42, as well. Also, the circumstances demonstrate Defendant acted intentionally; essentially, he participated in a gang-rape.

The gist of Defendant's appellate argument is that the State's witnesses were not credible. He notes the victim admitted she was intoxicated shortly before the offense, having smoked marijuana and taken Xanax. At trial, Defendant adduced expert testimony regarding the possible effects the drugs could have had on S.V.'s perception of events, or on her memory.

Defense counsel conducted the following colloquy with its expert, Dr. Paul Ware (emphasis added):

Q So given the assumption of the facts that I told you about, height, weight, the drugs that were taken, the time frame, and add to that that about 10 o'clock that evening, later that same night, that same evening, that a deputy or a detective would have indicated that he thought she was under the influence or she was intoxicated in some sort because of that, would that seem consistent with what I've told you about what she took in the time frame?
A Yes, that would be consistent.

Q Okay. And if the female that had consumed those drugs and marijuana had also consumed some additionally [sic] alcohol that afternoon, would that compound her intoxication?

A Yes, that would just add to the intoxication and prolong the intoxication in regard to the amount consumed.

Q And if that person that had consumed – the female that had consumed those drugs, was involved in this traumatic event in the middle of the afternoon after consuming all those drugs, and if she was somewhat confused about what happened, would that be explained or would it be reasonable to expect that she'd be confused because of the drugs, as well as the event that occurred?

A I would expect that person to show some level of confusion, not be as clear in their thinking and in their memory because of the intoxication, and certainly if a person had a traumatic experience, like being raped, that also would add to the stress and probably make that person not as sure in regard to details, small details.

Q And certainly and that's – that's typically, in your view, analogize the Xanex to alcohol, I mean, that's the affect [sic] that alcohol has is that, maybe if you've had too much alcohol it maybe distorts your perception.

A They have really the very same affect, [sic] so if you've seen someone alcohol intoxicated, someone Xanax intoxicated looks, walks, behaves the same way. May have some slurring of speech in the same way, but you just don't smell the alcohol.

Q And the combination of the drugs, the possible alcohol, and the traumatic event, I mean, those – the combination of the two would have a significant affect on their perception as far as recalling what happened?

A Well, it certainly would have a significant affect on their perception if they have a memory of the event and can talk about it, they certainly, I believe that would be their memory. I believe the perception-difficulty of the perception would be in regard to probably details of the time situation.

Q Those are all the questions.

This Court finds there is nothing in Ware's testimony that indicates the victim would have been mistaken in remembering that she was gang-raped, or that she would not be able to remember who the participants were. In fact, Ware's testimony appears to explain some of the minor inconsistencies in S.V.'s testimony that Defendant highlights on appeal. Defendant observes the victim was

not clear on the order in which the men raped her, did not remember whether Schoening or Guillory had the gun, and initially told an investigator that seven men (rather than five) had raped her.

However, as the State points out, S.V. testified Defendant raped her, that he was the second male to do so, that he did so twice, and that the second rape was anal. This Court finds that her testimony also clearly showed that Defendant's actions took place in the context of a gang-rape in which other men also had non-consensual intercourse with the victim.

Defendant also notes various inconsistencies among the testimonies of the other males who participated in the offense. This Court finds the chief inconsistency resulted from the attempts of a couple of them to relate versions of the incident that were partially exculpatory to themselves. However, none of their versions were exculpatory toward Defendant; all of the other participant's testimonies directly supported the victim's contention that Defendant raped her.

Defendant also complains that the testimonies of Forrest Bradford and Michael Guillory lacked credibility because they received comparatively lenient deals from the State. As already noted, Bradford pled to sexual battery, and Guillory was set to plead as a juvenile. Further, Guillory, Hoffpauir, and Schoening all testified pursuant to the court's order to do so. When Schoening was initially called to testify, he had trouble recalling events regarding the offense. Then he watched his earlier, video-recorded statements during lunch and later returned to the stand. As discussed earlier, Schoening then stated that Defendant participated in the offense. Each of the men denied that he was inculpating Defendant in return for favors from the State. As Defendant's appellate counsel acknowledges in brief, credibility is within the province of the fact-finder. In view of all the testimony supporting the basic elements of the crime, and the supporting DNA evidence, this Court finds the jury was reasonable in finding the State's witnesses credible, and in finding Defendant guilty of aggravated rape.

For the reasons discussed, this assignment lacks merit. *McDonald*, 838 So.2d at 130-134.

A reviewing court will not disturb a state court jury verdict so long as the evidence, viewed in the light most favorable to the verdict, is sufficient to allow a reasonable jury to find the defendant guilty beyond a reasonable doubt. *Young v. Guste*, 849 F.2d 970, 972 (5th Cir.1988); *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). It

is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781. Thus, the federal *habeas* court does not "focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a <u>rational</u> decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). In so doing, "[a]ll credibility choices and conflicting inferences are to be resolved in favor of the verdict." *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir.2005), quoting *United States v. Cyprian*, 197 F.3d 736, 740 (5th Cir.1999). The reviewing court is not authorized to substitute its interpretation of the evidence for that of the fact finder. *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir.1985). The Third Circuit Court of Appeals concluded that there was sufficient evidence to prove petitioner's guilt under Louisiana law, finding that a rational fact finder, viewing the evidence in the light most favorable to the prosecution, could have found beyond a reasonable doubt that the defendant committed an aggravated rape. Petitioner has not, nor can he, show that this finding was unreasonable. He continues only to suggest that the witnesses who testified against him were not credible, an issue inappropriate for a sufficiency of the evidence review. His sufficiency of the evidence claim is without merit.

### Claim 3 - Coerced Testimony of Accomplices

The Third Circuit Court of Appeals rejected this claim on direct appeal having determined, "the Defendant does not have standing to argue the Fifth Amendment rights of other individuals. *State v. Gaspard*, 96-1279 (La. App. 3 Cir. 2/11/98), 709 So.2d 213, *writ denied*,98-582 (La.7/2/98) 724 So.2d 202." *McDonald*, 838 So.2d at 136. While in this instance the state court did not explicitly rely upon clearly established federal law in denying petitioner's

claim, it did so implicitly. The Third Circuit's holding is certainly in accord with established United States Supreme Court jurisprudence. Compare, *United States v. Nobles*, 422 U.S. 225, 235, 95 S.Ct. 2160, 2167, 45 L.Ed.2d 141 (1975),

> The Fifth Amendment privilege against compulsory self-incrimination is an "intimate and personal one," which protects 'a private inner sanctum of individual feeling and thought and proscribes state intrusion to extract self-condemnation. *Couch v. United States*, 409 U.S. 322, 327, 93 S.Ct. 611, 615, 34 L.Ed.2d 548 (1973); see also *Bellis v. United States*, 417 U.S. 85, 90-91, 94 S.Ct. 2179, 2184-2185, 40 L.Ed.2d 678 (1974); *United States v. White*, 322 U.S. 694, 698, 64 S.Ct. 1248, 1251, 88 L.Ed. 1542 (1944). As we noted in *Couch, supra*, 409 U.S., at 328, 93 S.Ct., at 616, the "privilege is a personal privilege: it adheres basically to the person, not to information that may incriminate him."

Moreover, in the footnote associated with the above quote, the Court noted,

> "The purpose of the relevant part of the Fifth Amendment is to prevent compelled self-incrimination, not to protect private information. <u>Testimony demanded of a witness may be very private indeed, but unless it is incriminating and protected by the Amendment or unless protected by one of the evidentiary privileges, it must be disclosed.</u>" *Maness v. Meyers*, 419 U.S. 449, 473-474, 95 S.Ct. 584, 598, 42 L.Ed.2d 574 (1975) (White, J., concurring in result). [*id.*, emphasis supplied]

> In the instant case, the accomplices were not forced to incriminate themselves – each had

either already been convicted and/or were granted immunity from further prosecution.[12] This

---

[12]See doc. 20-2, Vol. 2, pp. 388-389, Motion to Compel Testimony of Michael C. Hoffpauir, at paragraph 5, "No testimony or other information compelled under the order, nor any information directly or indirectly derived from such testimony or other information, will be used against Michael C. Hoffpauir in any criminal case, except a prosecution for perjury, giving a false statement or otherwise failing to comply with this order."; see also doc. 20-2, Vol. 2, pp. 494-495, Motion to Compel Testimony of Michael Guillory at paragraph 5, "No testimony or other information compelled under the order, nor any information directly or indirectly derived from such testimony or other information, will be used against Michael Guillory in any criminal case, except a prosecution for perjury, giving a false statement or otherwise failing to comply with this order."; see also doc. 20-2, Vol. 2, pp. 496-497, Motion to Compel Testimony of Kristopher Schoening at paragraph 5, "No testimony or other information compelled under the order, nor any information directly or indirectly derived from such testimony or other information, will be used against Kristopher Schoening in any criminal case, except a prosecution for perjury, giving a false statement or otherwise failing to comply with this order."; see also doc. 20-2, Vol. 2, pp. 498-499, second Motion to Compel Testimony of Michael Hoffpauir at paragraph 5, "No testimony or other information compelled under the order, nor any information directly or indirectly derived from such testimony or other information, will be used against Michael Hoffpauir in any criminal case, except a prosecution for perjury, giving a false statement or otherwise failing to comply with this order.".

grant of immunity was explained to each of the accomplice witnesses prior to their testimony in court. [doc. 20-2, Vol. 5, pp. 1221-1237].

In short, immunity having been granted by the State prior to their testimony, the subject testimony was not protected by the Fifth Amendment privilege against self incrimination for the simple reason that the testimony had been fully immunized. "A witness has . . . a constitutional right to stand on the privilege against self-incrimination until it has been fairly demonstrated to him that an immunity, as broad in scope as the privilege it replaces, is available and applicable to him." *Stevens v. Marks*, 383 U.S. 234, 246, 86 S.Ct. 788, 794, 15 L.Ed.2d 724 (1966).

Petitioner's third claim for relief is therefore without a basis in law and fact and is without merit.

### 5. The Merits of Petitioner's Procedurally Defaulted Claims

The undersigned has concluded that petitioner's remaining claims while technically exhausted are now procedurally defaulted. Nevertheless, even if these claims had been fully exhausted and thus properly before the court, dismissal would be appropriate for the following reasons.

### Claim 2 – Speedy Trial

As shown above, petitioner did not provide the Louisiana courts with an opportunity to address any federal constitutional questions associated with his speedy trial concerns. Those courts were simply called upon to evaluate the issue pursuant to Louisiana statutory law.

Federal review of speedy trial claims involves the analysis of the following factors: (1) the length of the delay; (2) the reason for the delay; (3) the assertion of the right; and (4) the prejudice to petitioner. *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

As shown above, petitioner's first trial ended in a mistrial on October 20, 2000. [doc. 20-2, Vol. 1, pp. 39-42]. Petitioner, through counsel, David D. Palay, Jr., filed a Motion for a Speedy Trial on March 14, 2001. [doc. 20-2, Vol. 2, pp. 409 and 414]. He also filed Motions to Reduce Bond and a Motion to Quash which sought redaction of portions of his videotaped statement to the police authorities. [doc. 20-2, Vol. 2, p. 411 and p. 416]. Further, on April 12, 2001, Mr. Palay filed a Motion to Withdraw as Counsel of Record citing as grounds thereof petitioner's dissatisfaction with counsel's representation. [doc. 20-2, Vol. 2, pp. 421-423]. On April 16, 2001 petitioner wrote a letter to the court objecting to counsel's motion to withdraw. [doc. 20-2, Vol. 2, pp. 424-425]. On April 18, 2001 a hearing was convened. Mr. Palay's motion was granted over petitioner's objection and the district court appointed Thomas Barrett to represent petitioner and sent a notice to Barrett advising him of the appointment. [doc. 20-2, Vol. 1, p. 43; doc. 20-2, Vol. 2, p. 427].

Thereafter, on May 16, 2001 petitioner filed a *pro se* Motion for Bond Reduction. [doc. 20-2, Vol. 2, pp. 428-431]. On May 22, 2001, the trial court fixed a hearing date for petitioner's motion. [doc. 20-2, Vol. 2, p. 432]. On June 5, 2001, a hearing was convened and petitioner's motion was denied. [doc. 20-2, Vol. 1, p. 44]. Sometime prior to June 20, 2001, Mr. Barrett presented a Motion to Recuse to the trial judge. On June 20, 2001, a judgment recusing Judge Alcide Gray was signed in chambers and the Motion and Order were filed in the record on July 6, 2001. [doc. 20-2, Vol. 2, pp. 433-434].

On July 12, 2001 the matter was fixed for trial on September 10, 2001. [doc. 20-2, Vol. 1, p. 45].

On August 15, 2001, Barrett filed a Rule to Show Cause asking the court to set a date for

a hearing on petitioner's outstanding motions, including his motion for speedy trial. The District Attorney was ordered to show cause on September 5, 2001. [doc. 20-2, Vol. 2, p. 435]. On September 10, 2001, Barrett filed another Rule; on that date the court ordered the State to show cause on October 31, 2001. [doc. 20-2, Vol. 2, p. 436].

On October 31, 2001, a hearing was convened on petitioner's motions. At the conclusion of the hearing, the court found just cause for the delays in bringing petitioner to trial. [doc. 20-2, Vol. 1, pp. 46-47]

At some point, petitioner was under the impression that his trial was set to begin on October 22, 2001 because on September 24, 2001 petitioner filed a pro se Motion for Compulsory Process requesting the court to issue subpoenas for several witnesses. [id. pp. 437-440].

On September 29, 2001, Judge Godwin, who was assigned the case after the recusal of Judge Gray, issued an order deferring petitioner's motion. The order noted that the trial date of October 22 was the petit jury term for Judge Gray who had been recused. [doc. 20-2, Vol. 2, p. 441]

On December 5, 2001 petitioner filed a pro se Motion to Recuse Appointed Counsel. Therein petitioner expressed dissatisfaction with the representation provided by Mr. Barrett. [doc. 20-2, Vol. 2, pp. 442-443]. On December 11, 2001 Judge Godwin ordered that a hearing be convened on petitioner's motion. [doc. 20-2, Vol. 2, p. 444]. In the letter to Judge Godwin dated November4, 2001 petitioner complained that Barrett failed to protect and preserve petitioner's right to a speedy trial by not acting on the Motion filed in March, 2001 by petitioner's original attorney, Mr. Palay. Further, according to the letter, "Mr. Barrett was

appointed April 18, 2001. Mr. Barrett was informed by Mr. Palay that he had filed various

motions on my behalf.  I have a letter dated April 18, 2001, that I informed him that I wanted him

to follow up on all motions that Mr. Palay filed, one mainly a motion for speedy trial. Mr. Barrett

misinformed you that he couldn't be ready for trial. Sir, Mr. Barrett could have, and should have

been prepared for trial . . . .  There was no just cause for delay. He was informed in April to

compel the court for my transcript so that we could prepare, and proceed to trial July 9, 2001 . . .

. I was trying to get Mr. Barrett to raise the issue of the time limitation of art. 582, that the state

must commence the second trial within one year from the date the new trial was granted . . . .

The state need to retry this case by the 20 October 2001". [doc. 20-2, Vol. 2,  p. 445-446].

On December 10, 2001 petitioner wrote another letter to the judge requesting him to set a

hearing to litigate whether or not petitioner should be entitled to the substance abuse treatment

history of the victim. [doc. 20-2, Vol. 2,  pp. 447-449].

On December 13, 2001 a hearing was convened.  Judge Godwin refused to reconsider the

motion for speedy trial and denied petitioner's motion to recuse his court-appointed attorney.

[doc. 20-2, Vol. 1, p. 48].

On January 24, 2002 petitioner's attorney filed a "Jackson Demand for Notice of Any

Bad Acts." [doc. 20-2, Vol. 2,  450-452].  On the same date he filed a Motion to Quash based on

the State's failure to timely commence trial pursuant to La. C.Cr.P. art. 582. [doc. 20-2, Vol. 2,

p. 453-455].  A hearing on the motion was scheduled for February 1, 2002. [doc. 20-2, Vol. 2,

456].  On January 24, 2002, petitioner's counsel re-urged his Motion to Quash which sought

redaction of portions of petitioner's videotaped statement to the police following his arrest. [doc.

20-2, Vol. 2,  pp. 458-462].  On the same date he filed a Motion to Preclude Injection of Hearsay

Statements. [doc. 20-2, Vol. 2, pp. 463-466].

On February 1, 2002 a hearing was convened. The court put the state on notice of their obligation to inform the defense of any "bad acts" evidence that would be offered at trial. The court granted in part and denied in part petitioner's motion to redact portions of the videotaped statement he gave to the police. The court granted petitioner's motion to exclude hearsay statements. The court denied petitioner's motion to quash based upon the alleged violation of the prescriptive periods set forth in the Louisiana Code of Criminal Procedure. Finally, the court denied petitioner's motion for exculpatory evidence. [doc. 20-2, Vol. 1, pp. 49-50].

On February 15, 2002, petitioner's attorney filed a Motion for Severance. [doc. 20-2, Vol. 2, p. 474].

On February 19, 2002 the state filed a Motion for Continuance noting that the Assistant District Attorney assigned to the case was ill and therefore could not attend the trial scheduled to begin on that date. The trial was continued to April 1, 2002. [doc. 20-2, Vol. 2, p. 475; doc. 20-2, Vol. 1, p. 51].

The trial commenced on April 1, 2002. [doc. 20-2, Vol. 1, p. 53].

As noted above, Federal review of speedy trial claims involves the analysis of the following factors: (1) the length of the delay; (2) the reason for the delay; (3) the assertion of the right; and (4) the prejudice to petitioner. *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

With regard to the length of delay, the record reflects that petitioner's first trial ended in a mistrial on October 20, 2000. [doc. 20-2, Vol. 1, pp. 39-42]. Retrial commenced on April 1, 2002. [doc. 20-2, Vol. 1, p. 53]. The length of the delay was less than 18 months. As to the

reasons for delay, the continuance of the trial from the February 19, 2002 fixing to April 1 was

necessitated by the incapacity of the prosecuting attorney. [doc. 20-2, Vol. 6, pp. 1400-1410].

Other delays were obviously occasioned when petitioner's original counsel was permitted to

withdraw and new counsel was appointed. These factors clearly should not be attributed to the

prosecution. Further delay was occasioned by the recusal of Judge Gray. Petitioner, of course,

asserted his speedy trial rights, but he has never suggested that the delays complained of resulted

in any prejudice. [see, doc. 20-2, Vol. 6, pp. 1400-1410; doc. 1-4, pp. 22-27]

Thus, petitioner's speedy trial claim, even if it had been fully exhausted, is subject to

dismissal on the merits.

### Claim 4 – Recusal of the Appeals Court Judge

In his fourth claim for relief petitioner argues, "Petitioner's due process and equal

protection rights guaranteed by the Fourteenth Amendment of the United States Constitution was

violated when the appellate court panel, reviewing the defendant's claims became tainted when

Judge Billy Howard Ezell failed to recuse himself because of his prior involvement in a 1997

child custody case in the matter of '*Randy McDonald v. Edd Walden*' in Louisiana State Juvenile

Court." [doc. 1-4, pp. 31-32]. However, as shown above, petitioner did not provide the

Louisiana courts with an opportunity to address any federal constitutional questions associated

with this claim. Those courts were simply called upon to evaluate the issue pursuant to Louisiana

statutory law.

Nevertheless, were this claim to be evaluated under the due process clause of the United

States Constitution, it would be dismissed as manifestly without merit. In *United States v.*

*Couch*, 896 F.2d 78 (5th Cir. 1990), the Fifth Circuit discussed judicial recusal in the context of

the Due Process Clause.  That court looked to prior Supreme Court jurisprudence for the

proposition that only in the most extreme cases of bias or prejudice is disqualification of judge

constitutionally required. *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 821, 106 S.Ct. 1580, 1585

(1986).  The court analyzed the cited jurisprudence and noted,

> The Supreme Court began its analysis by noting that "most matters relating to
> judicial disqualification [do] not rise to a constitutional level" *Aetna*, 475 U.S. at
> 820, 106 S.Ct. at 1584 (quoting *F.T.C. v. Cement Institute*, 333 U.S. 683, 702, 68
> S.Ct. 793, 804, 92 L.Ed. 1010 (1948)), for "the Constitution does not reach every
> issue of judicial qualification." 475 U.S. at 821, 106 S.Ct. at 1585. Having noted
> this the Court recalled its holding in *Tumey v. Ohio*, 273 U.S. 510, 523, 47 S.Ct.
> 437, 441, 71 L.Ed. 749 (1927), which announced that "it certainly violates the
> [Due Process Clause of the] Fourteenth Amendment ... to subject [a person's]
> liberty or property to the judgment of a court the judge of which has a direct,
> personal, substantial, pecuniary interest in reaching a conclusion against him in
> his case." 475 U.S. at 821–22, 106 S.Ct. at 1585–86. The Court acknowledged,
> however, that what degree or kind of interest is sufficient to disqualify a judge
> from sitting "cannot be defined with precision."  475 U.S. at 822, 106 S.Ct. at
> 1585 (quoting *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed.
> 942 (1955)).
>
> To give substance to this imprecise inquiry the *Aetna* court adopted as a
> "reasonable formulation" the inquiry whether the "situation is one 'which would
> offer a possible temptation to the average ... judge to ... lead him not to hold the
> balance nice, clear and true.'"  475 U.S. at 822, 106 S.Ct. at 1585 (quoting *Ward
> v. Monroeville*, 409 U.S. 57, 60, 93 S.Ct. 80, 83, 34 L.Ed.2d 267 (1972)).
> Applying this due process standard to the case before it, the Court concluded that
> although general allegations of bias and hostility do not rise to a due process
> violation, the justice's financial stake in the outcome—regardless of whether he
> was in fact impartial—was "direct, personal, substantial [and] pecuniary" enough
> to constitute a violation of the Due Process Clause, 475 U.S. at 824–25, 106 S.Ct.
> at 1586–87. *United States v. Couch*, 896 F.2d at 81-82 (5th Cir. 1990).

Here, petitioner has clearly provided on the most general and conclusory allegations of

bias on the part of Judge Ezell. Under the due process analysis approved by federal

jurisprudence, his claim is manifestly without a basis in fact or law.

***Claim 5 – Unconstitutionality of La. R.S.46:1844(W)***

As his fifth claim for relief petitioner argued, "The provisions of La. R.S.46:1844(W) – Confidentiality of crime victims who are minors and victims of sex offenses, §(1) are unconstitutional as applied to petitioner as the statute creates a 'Special Law' regarding a 'class' of defendants in violation of LSA Const. Arts I §2, 3 and U.S. Const. Amend. 14 because petitioner was denied his right to review and obtain a copy of the criminal proceedings regarding the second trial. Additionally Mrs. Dora Rabalais at the Louisiana State Penitentiary whom was directed by the Appellate court to allow McDonald the right to review his transcripts disobeyed the appellate court mandate on her own authority and returned the trial records to the court of appeal, Third Circuit annulling the appellate court's order and petitioner guaranteed rights under the federal and state constitution." [doc. 1-4., pp. 33-38].

The undersigned concluded that this claim was not exhausted because petitioner did not fairly present it to the Louisiana Supreme Court. Nevertheless, even if the claim had been exhausted, it would not serve as the basis for relief.

Title 28 U.S.C. §2254 provides, "The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court <u>only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States</u>." Petitioner's custody is unrelated to the issue of whether or not La. R.S.46:1844(W) is unconstitutional. Further, petitioner's custody is unrelated to whether or not an employee of the Louisiana State Penitentiary violated an order of the Third Circuit Court of Appeals. Petitioner's final claim fails to state a claim for which relief may be granted and its dismissal on that basis is in order even if

the claim is determined to have been fully exhausted.

### 5. Conclusion

Claim 1 (sufficiency of the evidence) and Claim 3 (accomplice testimony) were fully exhausted in the Louisiana courts having been raised on direct appeal to the Third Circuit Court of Appeals and thereafter in a timely filed application for writs in the Louisiana Supreme Court. Nevertheless, these claims are without merit and dismissal on that basis is recommended.

Claim 2 (speedy trial), Claim 4 (recusal of Judge Ezell) and Claim 5 (unconstitutionality of LSA R.S.46:144(W)) were not fully exhausted in the courts of Louisiana. Petitioner did not present the federal constitutional issues he raises now to the Louisiana courts when he argued Claims 2 and 4 in his Application for Post-Conviction Relief. Although petitioner raised federal concerns when he argued Claim 5 in his Application for Post-Conviction Relief, he failed to fairly present this claim to the Louisiana Supreme Court when he filed his application for supervisory writs. Further, these unexhausted claims are now "technically exhausted" but procedurally defaulted since petitioner would now be unable to litigate these claims in the Louisiana courts. Petitioner has shown neither cause nor prejudice for this default; nor has he shown that the court's failure to consider the merits of the claim will result in a miscarriage of justice. Finally, even were the court to consider these technically exhausted but defaulted claims, each has been analyzed and shown to be without a basis in law or fact.

Accordingly,

**IT IS RECOMMENDED** that this petition for *habeas corpus* should be **DENIED AND DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved

by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within ten (10) days after being served with a copy of any objections or response to the District judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir.  1996).**

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, September 8, 2006.

ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE